**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

IN RE: SHALE OIL ANTITRUST LITIGATION               Case No. 1:24-md-03119-MLG-LF

This Order Relates to All Cases

**MEMORANDUM OPINION AND ORDER
<u>DENYING KANSAS'S MOTION TO INTERVENE</u>**

Federal Rule of Civil Procedure 24 governs the process for a non-party to intervene. Per that provision, an applicant seeking intervention as a matter of right must satisfy Rule 24(a), and when seeking relief separate from other parties, it must also establish Article III standing. The rule also allows for permissive intervention under certain circumstances, but only at the Court's discretion and after considering whether the new party's entry would unduly delay the adjudication of the original parties' rights. *Id.* Here, Kansas moves to intervene as a defendant so that it can seek dismissal—without prejudice—of various political subdivisions' claims. Doc. 153. By contrast, the Defendants are seeking dismissal with prejudice of all claims. Because this relief is substantively distinct from that of the existing Defendants, Kansas must independently establish standing. The Court concludes it has not met that burden. Even assuming otherwise, Kansas does not identify a protectable interest that will be impaired by this litigation. The Court also declines permissive intervention because Kansas does not have a defense or claim that shares a common question of law or fact with the main action. Rather, it seeks to litigate collateral issues that would prolong this litigation without advancing resolution of the original parties' claims and defenses. For these reasons, which are discussed in detail below, the motion is denied.

**BACKGROUND**

**I.      Plaintiffs' Claims and Defendants' Response**

In early 2025, several individuals, businesses, and state political subdivisions (collectively "Plaintiffs") filed a Consolidated Class Action Complaint ("CCAC") alleging that eight of the largest United States shale oil producers and two of their CEOs[1] (collectively "Defendants") conspired to constrain shale oil production to artificially inflate its price and that of its derivative products. Doc. 86 at 4-5, 8-10, 106 ¶¶ 1, 7-11, 15, 237. Plaintiffs include Ford County, Kansas ("Ford County"), City of San Diego, City of San Jose, County of San Mateo, and Mayor and City Council of Baltimore (collectively "Political Subdivisions"). *Id.* at 13-15, 18 ¶¶ 28-30, 37, 53. They allege that during the Class Period (defined as January 1, 2021 to the present), they purchased gasoline and other crude oil–derived fuel products at supracompetitive prices due to Defendants' anticompetitive conduct. *Id.* at 10, 110-111, 113-16 ¶¶ 15-16, 248-49, 253-54, 260-73.

Based on these and the rest of the CCAC's allegations, the Political Subdivisions—along with the other class plaintiffs—seek to certify a nationwide injunctive class pursuant to Federal Rule of Civil Procedure 23(b)(2) in connection with their claim under Section 1 of the Sherman Act, 15 U.S.C. § 1. Doc. 86 at 110, 113-15 ¶¶ 248, 260-65. They ask the Court to enjoin Defendants from continuing their anticompetitive conduct and prohibit such actions in the future. *Id.* at 150-51. The Political Subdivisions further seek damages (on a classwide basis) in accordance with

---

[1] The eight oil producers include Permian Resources Corporation, known as Centennial Resource Development, Inc. during the relevant period; Chesapeake Energy Corporation, now known as Expand Energy Corporation; Continental Resources, Inc.; Diamondback Energy, Inc.; EOG Resources, Inc.; Hess Corporation; Occidental Petroleum Corporation; and Pioneer Natural Resources Company. Doc. 86 at 22-25 ¶¶ 70-77. One of the individual defendants includes Scott D. Sheffield, who served as "the [CEO] of Defendant Pioneer during all times relevant to [the CCAC], until his retirement at the end of 2023." *Id.* at 25 ¶ 78. The other is John B. Hess, who "has been the [CEO] of Defendant Hess Corporation since 1995 and has served as CEO during all times relevant to [the CCAC]." *Id.* ¶ 79.

applicable state statutes.[2] *Id.* at 110-11, 115-16 ¶¶ 249, 260-65. In all instances, the Political

Subdivisions cabin the scope of their requested relief "to the extent permitted by [] state laws." *Id.*

at 116 ¶ 271.

The Defendants filed motions to dismiss in response to the CCAC, wherein they disclaim

any wrongdoing and challenge the viability of Plaintiffs' claims. Doc. 129 (joint motion to

dismiss); Docs. 123-27, 130-32 (individual motions to dismiss). For example, Defendants note

that, in most instances, Plaintiffs allege that they increased oil production during the Class Period,

which is inconsistent with anticompetitive conduct. *See* Doc. 129 at 20. They also question whether

market structure, as described in the CCAC, is conducive to collusion given that their production

constitutes a small share of global crude oil and that U.S. production "remains highly fragmented."

*See id*. at 20-21. Defendants also assert that Plaintiffs insufficiently allege parallel conduct and

"plus factors" to support a plausible antitrust conspiracy lawsuit. *See id.* at 14-15; *Jones v. Micron

Tech., Inc.*, 400 F. Supp. 3d 897, 915 (N.D. Cal. 2019) ("To successfully plead an agreement to

restrain trade using factual allegations based on circumstantial evidence, a plaintiff must present

allegations of parallel conduct as well as so-called 'plus factors.'" (citing *Prosterman v. Am.

Airlines, Inc.*, 747 F. App'x 458, 461 (9th Cir. 2018), *cert. denied*, 586 U.S. 1225 (2019) (mem.))).

Lastly, Defendants argue that Plaintiffs lack standing, the political question and act of state

doctrines bar their suit, and the state law claims are deficient. *Id.* at 13-15. Ultimately, Defendants

request conclusive relief: for "this Court to dismiss plaintiffs' complaint in its entirety with

prejudice." *Id.* at 62.

---

[2] For example, Ford County seeks "all forms of relief available under" Kansas antitrust laws. *Id.*
at 127 (citing Kan. Stat. Ann. §§ 50-101 to -50-164 (2026)).

## II.   Kansas's Motion to Intervene

The State of Kansas neither produces shale oil nor is a part of the claimed conspiracy. It further concedes that state law expressly authorizes Ford County to pursue the instant claims, and it fails to identify any other state laws or decisional authority precluding other Political Subdivisions from bringing litigation. *See* Doc. 242 at 25:24-26:10; *id.* at 81:11-84:4. Nevertheless, Kansas seeks to intervene in this case as a defendant in order "to defend its sovereignty and parens patriae and statutory authority." Doc. 153 at 1 (citation modified). Its ultimate objective is dismissal—without prejudice—of the Political Subdivisions' claims. *See id.* at 28:16-23. Whether it would later initiate claims on behalf of its residents is unclear. Kansas is equivocal on the matter. *Id.* at 36:13-37:20.

**DISCUSSION**

## I.   Kansas Is Precluded from Intervening as a Matter of Right

### A.   Kansas Seeks Different Relief than Defendants and Must Therefore Establish Article III Standing

"For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). This necessary predicate applies to all parties regardless of when and how their name shows up on the case caption, which makes sense given that Kansas "actively seeks to participate in the resolution of a case in which the plaintiff[s] did not bring a claim against or request any relief from [it]." *Cal. Steel Indus. v. United States*, 48 F.4th 1336, 1343 (Fed. Cir. 2022). Accordingly, even as a defendant-intervenor, Kansas must establish standing. *Kane Cnty. v. United States*, 928 F.3d 877, 887 n.12 (10th Cir. 2019) (noting *Town of Chester*'s holding applies equally to defendant-intervenors). It may meet that burden in one of two ways. When applicable, it may piggyback on Defendants' Article III standing, provided it seeks the same form of relief as

those parties. *Id.* at 886-87. But significantly, if Kansas's requested relief substantively differs from that of Defendants, then it must establish its own Article III standing. *Id.*; *see also Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (2015) ("[W]here a party tries to intervene as another defendant, we have required it to demonstrate Article III standing, reasoning that otherwise 'any organization or individual with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation.'" (quoting *Deutsche Bank Nat'l Tr. Co. v. Fed. Deposit. Ins. Corp.*, 717 F.3d 189, 195 (D.C. Cir. 2013) (Silberman, J., concurring))), *abrogated on other grounds, by Institutional S'holder Servs. Inc. v. Sec. & Exch. Comm'n*, 142 F.4th 757 (D.C. Cir. 2025). The Court therefore begins by comparing the relief Kansas seeks with that sought by the Defendants.

Kansas seeks to intervene so that it may (later move to) dismiss the Political Subdivisions' claims without prejudice. Reviving those claims remains a possibility but that outcome (and its timing) is uncertain. *See* Doc. 242 at 40:9-12 ("It is true that we do not know whether or not we want to bring [any claims] yet . . . ."). Defendants, by contrast, aim to "dismiss all of plaintiffs' claims with prejudice" now. Doc. 129 at 15. A prompt and decisive resolution is the core of their request.

Despite the clear distinctions in these outcomes, Kansas contends that its requested relief is sufficiently similar for purposes of Federal Rule of Civil Procedure 24(a)(2). *See* Doc. 215 at 4-10. Simply put, Kansas's position is that all Defendants seek dismissal, and it does too. The matter is not so straightforward. Although Defendants and Kansas facially seek similar relief, that is not dispositive. The substance of the request is the meaningful consideration.

The Supreme Court's decision in *Town of Chester* provides an illustrative example of this substance-focused approach. 581 U.S. 433. There, the Court considered a request for intervention filed in a real estate development dispute. *See id.* at 435-38. The plaintiff and the proposed intervenor (Laroe) both sought monetary damages from the defendant. *Id.* at 440-42. The Court nevertheless held that "[i]f Laroe wants only a money judgment of its own running directly against the Town, then it seeks damages different from those sought by Sherman and must establish its own Article III standing in order to intervene." *Id.* at 442. Authoring the unanimous decision, Justice Alito explained that the relevant consideration is whether the intervenor seeks relief in their own right, not whether it can be depicted as belonging in the same category. *See id.* at 440-41. When a proposed intervenor seeks distinct relief, it may not rely on the existing claim to establish standing. Rule 24 concerns substance, not categorical labels.

The Tenth Circuit likewise directs district courts to consider the parties' practical objectives rather than categorical descriptions. In *Kane County*, plaintiffs filed suit against the federal government seeking to quiet title to various rights of way. 928 F.3d at 882-83. The Southern Utah Wilderness Alliance ("SUWA")—whose mission is "preserving the wilderness of the Colorado Plateau"—"moved to intervene as of right [as a defendant] under Rule 24(a)(2). . . ." *Id.* at 882-83 & n.1. Although SUWA had no interest in claiming title, the Tenth Circuit concluded that it sought relief substantively similar enough to that requested by the federal government. *See id.* at 891-92. Specifically, both sought to ensure that the United States retained "'the maximum amount of property' and w[ould] argue for 'the smallest widths [they] c[ould] based on the historical evidence.'" *Id.* at 887 (quoting United States' Response Brief at 22, 32 (No. 18-4122); Oral Argument, at 18:30 (No. 18-4122)). As a result, SUWA was found to have a right to intervene in the litigation. *See* 928 F.3d at 890-97.

The Ninth Circuit has also applied this objective-focused approach. In *Washington v. U.S. Food & Drug Administration*, the court considered whether Washington and Idaho—the latter moving to intervene in that litigation involving the Food and Drug Administration's ("FDA") regulation of mifepristone—sought the same relief. 108 F.4th 1163, 1168 (9th Cir. 2024). Both states sought declarations regarding the FDA's restrictions as well as injunctive relief. *See id.* at 1170-71. Rejecting a formalistic approach, the court held that "[t]o assess whether Idaho and Washington seek the same relief, we look to the parties' complaints, which is the 'best evidence of the relief [they] seek[].' In so doing, we consider not just the legal form of the parties' claims, but also their ultimate objectives." *Id.* at 1172-73 (alterations in original) (quoting *Town of Chester*, 581 U.S. at 440). The court acknowledged—but found it unimportant—that the complaints shared superficial commonalities. *Id.* at 1173. The relevant fact was that "the two complaints ha[d] little in common and [we]re, in many respects, diametrically opposed." *Id.* The court held that given the dissimilar forms of relief at issue, Idaho was precluded from intervening as of right. *Id.* at 1173, 1178.

Applying the principles from these holdings here, the Court concludes that Kansas seeks relief that differs meaningfully from the Defendants'. Kansas aims solely to dismiss the Political Subdivisions' claims without prejudice, allowing for their later potential refiling. *See* Doc. 153 at 15. By contrast, Defendants request a final ruling that ends this case posthaste. *See* Doc. 129. These outcomes plainly conflict.[3] As Kansas concedes, the "differences [in the relief sought] relate to the unique, party-specific interests at stake." Doc. 215 at 4. These distinctions are substantive. Kansas

---

[3] Obviously, the Court cannot simultaneously grant Kansas's motion to dismiss the Political Subdivisions without prejudice—thereby allowing those claims to be brought later—while also granting the Defendants' request to dismiss all claims with prejudice.

therefore may not rely on Defendants' standing and must establish Article III standing independently.

### B.    Kansas Fails to Establish Article III Standing

Article III of the United States Constitution limits federal judicial power to the resolution of Cases and Controversies. *See* U.S. Const. art. III, § 2. That limitation incorporates the understanding that a party invoking federal jurisdiction "must have a personal 'stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 812, 820 (1997)); *Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015) ("One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing."). To establish Article III standing, a litigant must "show (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." *Kane Cnty.*, 928 F.3d at 888 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Given the arguments presented, the Court focuses its analysis on the first factor—demonstration of a concrete or imminent injury.

Kansas's proclaimed status as "an objecting member of the class seeking to participate in this litigation" does not establish a standing-type injury. Doc. 215 at 2-3 (citing *Devlin v. Scardelletti*, 536 U.S. 1, 6-11 (2002)). A class certification motion has yet to be filed, and Plaintiffs represent that all state and federal entities will be excluded "from any proposed class when seeking Rule 23 class certification, as is convention." Doc. 175 at 18 n.23. Kansas is therefore not an unnamed member of a certified class, and it has not shown that it is even a putative class member. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is

certified."); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) ("[A] nonnamed class member is [not] a party to the class-action litigation before the class is certified" (emphasis deleted) (internal quotation marks deleted) (quoting *Devlin*, 536 U.S. at 16, n.1 (Scalia, J., dissenting))). Kansas's asserted class-member status does not establish an injury in fact.

Kansas's principal theory of injury centers around notions of state sovereignty. It asserts that the Political Subdivisions are usurping the state Attorney General's role to litigate on behalf of the state and its citizens. *See* Doc. 215 at 5-8. That argument is inconsistent with state law and does not establish an injury for purposes of standing. To be sure, Section 50-162 of the Kansas Statutes authorizes the Kansas Attorney General ("KAG") to bring and intervene in certain antitrust claims "on behalf of the state of Kansas or any city, town, political subdivision, or other governmental agency, body or authority established under the laws of the state of Kansas . . . ." *Id.* But that law does not give the KAG exclusive authority over such suits, and the Kansas State Legislature has expressly permitted the Political Subdivisions to pursue claims of their own. *See id.* § 50-161. Moreover, while the law permits the KAG to intervene "on behalf of" the relevant political subdivision, that is not the approach it takes here. *See id.* § 50-162. The KAG seeks to intervene as a defendant against the Political Subdivisions in order to dismiss their claims. Thus, the KAG is not acting on behalf of any of the Political Subdivisions; it is adverse to them. Kansas identifies no statutory interest that is impaired by the Political Subdivisions' prosecution of their claims. At most, the KAG has demonstrated a dispute regarding the Political Subdivisions' litigation choices. *Cf.* Doc. 153 at 9-15. But that disagreement is not an injury in fact for standing purposes.

Kansas further argues that its "sovereign interests are impaired or impacted" by the Political Subdivisions' claims. *See* Doc. 215 at 8-10. The crux of the argument is that the Political

9

Subdivisions are acting ultra vires because they allege statewide injuries and seek relief that affects Kansans generally. *See id.* at 7-8. The KAG views those claims as "quasi-sovereign" in nature, thereby implicating the parens patriae doctrine. *Id*. But as a state invoking the doctrine, Kansas must demonstrate a quasi-sovereign interest that is "sufficiently concrete to create an actual controversy between the State and the defendant" and it must also demonstrate a concomitant injury to that interest. *Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 602 (1982). It has not done so. Kansas identifies no threat to the health, welfare, or economic well-being of its residents if the Political Subdivisions continue prosecuting this action. *Id*. at 607 ("[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."); *see also Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868, 873 (8th Cir. 2015) (noting that a state attorney general is not always involving parens patriae authority when it files suit).

The KAG raises the possibility of bringing future claims, but that outcome is not assured. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 110 (10th Cir. 2024) ("Speculative plans or vague intentions" to one day maybe act are not equivalent to an actual or imminent injury (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992))). Kansas does not affirmatively represent that it will sue Defendants. Nor does it identify any claims it intends to bring or indicate when such an action would be filed. Kansas's position is instead founded on contingencies that may never materialize. As Justice Scalia put it, "'some day intentions'—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Kansas provides no basis, even prima facie, to suggest that the Political Subdivisions' claims—which state law expressly allows—will yield a concrete injury.

Kansas also asserts that it possesses a distinct property and economic interest in this litigation—the collection of taxes "on 'all motor-vehicle fuels or special fuels which are used, sold, or delivered in [Kansas] for any purpose whatsoever,' which includes the crude oil derivative products at the subject of litigation." Doc. 153 at 12 (citation modified) (citing Kan. Stat. Ann. § 79-3408 (2026)). But Kansas provides no explanation of how the Political Subdivisions prosecuting their claims harms or imminently threatens its ability to impose or collect these taxes. *See id.* Its claims of impaired tax collection are unsupported, speculative, and do not establish Article III standing.

Similarly unavailing is Kansas's expressed property and economic interest in "the civil penalties that may result from this litigation." *Id.* (citing § 50-160). Again, this is a nonissue. "Plaintiff individuals and non-state governmental entities cannot and do not sue for civil penalties under the Kansas Restraint of Trade Act . . . ."[4] Doc. 175 at 13-14. Those forms of relief are not at issue and Kansas does not provide an explanation as to how this litigation would threaten its ability to collect such penalties.

Lastly, Kansas's proclaimed fears regarding the preclusive or precedential effects of this case on a future hypothetical lawsuit do not establish a concrete injury. *See* Doc. 153 at 13 ("Kansas's interests may be impaired by the disposition of the case by operation of res judicata, collateral estoppel, or stare decisis . . . .") (emphases deleted). Those preclusion concerns are wholly speculative given the present procedural posture: Kansas is not a party, no class has been

---

[4] *Compare* § 50-160 ("The commission of any act or practice declared to be a violation of the Kansas restraint of trade act shall render the violator liable to the state for the payment of a civil penalty in a sum set by the court of not less than $100 nor more than $5,000 for each day such violation shall have occurred."), *with* § 50-147 ("The rights and remedies given by this act shall be construed as cumulative of all other laws in force in this state, and shall not affect, change or repeal any other remedies or rights now existing in this state for the enforcement, payment or collection of fines, penalties and forfeitures.").

11

certified, and a judgment has not been entered. Kansas has not identified any recognized legal principle of nonparty preclusion that would apply. *See Ala. Mun. Distribs. Grp. v. Fed. Energy Regul. Comm'n.*, 312 F.3d 470, 474 (D.C. Cir. 2002) (reasoning that standing cannot "grow out of a harm predicated on a potential collateral estoppel effect" because "it would infer standing in an initial case from the possibility of collateral estoppel in a later one—a possibility that . . . could only materialize *if* standing were found in the first case"); *id.* ("To create standing out of the preclusive effect that would flow from granting standing is to create it ex nihilo. In contrast, our denial of standing here necessarily implies that petitioners may not be estopped from challenging these findings in a later court case."). Nor does the potential stare decisis effect of any rulings give rise to a concrete or imminent injury. At most, stare decisis is a potential hurdle to clear in a hypothetical case filed at some point in the unspecified future. That is not an injury in fact.

Article III standing requires more than Kansas provides here. *See Lujan*, 504 U.S. at 564. Basic separation of powers principles mandate the demonstration of a concrete injury. *TransUnion LLC*, 594 U.S. at 422 (citing *Raines*, 521 U.S. at 820). In this case, Kansas's claimed harms are either unsupported (tax collection), a nonissue (civil penalties, being a nonnamed member of a class, and the Political Subdivisions bringing claims that Kansas state law authorizes), or hypothetical (how its potential claims could be affected). Those speculative and contingent concerns do not meet Article III's standing requirements. *See Lujan*, 504 U.S. 555. Kansas has not identified a concrete and imminent injury to any protected interest, and the quarrel between the KAG and the Political Subdivisions over the propriety of this litigation is not one for this Court to resolve.

**C.      Kansas Has Not Demonstrated a Protectable Interest That May Be Impaired in This Litigation**

Even if Kansas sought the same form of relief as Defendants and thus did not need to establish Article III standing independently, it could still not intervene as a matter of right. Rule 24(a)(2) requires Kansas to establish, inter alia, "an interest relating to the property or transaction that is the subject of the action [and] the potential impairment of that interest . . . ."[5] *Kane Cty.*, 928 F.3d at 889. Delineating the scope of an interest sufficient to meet the rule's requirement is grounded in pragmatic considerations and there is no "rigid formula that will produce the 'correct' answer in every case." *San Juan Cnty. v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc). Rather, district courts should apply practical judgment and consider both the strength of the interest at issue and "the potential risk of injury to that interest" absent intervention. *Id*. Meeting that benchmark imposes a minimal but not nonexistent burden on the moving party. *See Kane Cnty.*, 928 F.3d at 890 (citing *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)). It is incumbent on the would-be intervenor to demonstrate a genuine interest that is adversely affected by the litigation. *See San Juan Cnty.*, 503 F.3d at 1199; *see also Coal. of Arizona/New Mexico Cntys. for Stable Econ. Growth*, 100 F.3d at 839-40 (holding that the proposed intervenor had a protectable interest in litigation threatening the Mexican Spotted Owl because they were a commercial wildlife photographer, had photographed the owl previously, and had played a crucial

---

[5] Intervention as of right under Rule 24(a)(2) is permitted if "(1) the application is 'timely'; (2) 'the applicant claims an interest relating to the property or transaction which is the subject of the action'; (3) the applicant's interest 'may as a practical matter' be 'impaired or impeded'; and (4) 'the applicant's interest is not adequately represented by existing parties.'" *Coal. of Arizona/New Mexico Cntys. for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (citation modified) (quoting Fed. R. Civ. P. 24(a)(2)). All four elements must be satisfied. *See Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 232 F.R.D. 392, 395 (D. Utah 2005) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)). Because Kansas fails to show an impaired interest, it cannot intervene as a matter of right. These failings render the other two elements unnecessary to the disposition of the instant motion.

role in listing the owl under the Endangered Species Act); *Kane Cnty.*, 928 F.3d at 892 (concluding that SUWA had an interest that could be impaired by the litigation because of its "decades-long history of advocating for the protection of the[] federal public lands[] and the plaintiffs' stated objective of widening the[] roads . . . "). Kansas must identify an interest relating to this action and provide a corresponding explanation of how this lawsuit will impair its ability to protect that interest. It has not met its burden.

Kansas largely relies on claims that the Political Subdivisions are usurping its sovereign parens patriae authority and affecting "its ability to bring claims against the Shale Oil Defendants . . . ." Doc. 153 at 10. None of these purported injuries support intervention as of right. *See* Fed. R. Civ. P. 24(a).

To begin, Kansas provides no cogent explanation as to why the Political Subdivisions' lawful exercise of statutory authority impairs an interest belonging to the state. On the contrary, Kansas law expressly authorizes Ford County's suit, and the KAG cites no authority precluding the other Political Subdivisions from litigating their antitrust claims. *See* Kan. Stat. Ann. § 50-161 (2026). Although Kansas law allows the KAG to intervene on behalf of its political subdivisions,[6] that is not the posture here. The KAG seeks to intervene in opposition to (not on behalf of) the Political Subdivisions in order to dismiss their claims. *See* discussion *supra* Section I.B. Thus, Kansas has identified no statutory interest impaired through this litigation, much less one that has been usurped. It simply disagrees with the Political Subdivisions' decision to pursue suit. That is not grounds for intervention under Rule 24(a). *See, e.g.*, *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 (9th Cir. 2022) ("[W]hen a proposed intervenor has not alleged

---

[6] Obviously, the KAG has no legal authority to act on behalf of any other governmental plaintiff in this case.

14

any substantive disagreement between it and the existing parties to the suit, and instead has rested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." (internal quotation marks deleted) (quoting *League of United Latin Am. Citizens v. Wilson*, 131 F. 3d 1297, 1306 (9th Cir. 1997))).

Similarly, Kansas's invocation of sovereign and parens patriae authority do not constitute impaired interests for purposes of intervention. The Political Subdivisions are acting in accord with state laws, and their requested relief is expressly tied to that which is permissible under applicable state statutes. Kan. Stat. Ann. § 50-161 (2026). That lawful invocation of state law does not impair the KAG's ability to protect Kansas's sovereign interests or hinder the KAG's ability to pursue its own claims in the (unlikely)[7] event it determines one is warranted. Its impairment arguments rest entirely on the unrealized potential that resolution of the Political Subdivisions' claims will have some unspecified impact on a suit the KAG may (or may not) bring later.

Kansas also raises a concern relating to economic interests given that the state "collects taxes on 'all motor-vehicle fuels or special fuels[,]'" including "crude oil derivative products at the subject of litigation." Doc. 153 at 12. It additionally points to the "civil penalties that may result from this litigation." *Id*. (citing Kan. Stat. Ann. § 50-160 (2026)). But Kansas does not explain how either interest is impaired. The KAG does not contend that this litigation hinders the state's ability to levy, administer, or collect taxes. And the Political Subdivisions are not suing for

---

[7] *See* News Release, Kris Kobach, Att'y Gen. of Kan., *Kobach Seeks to Intervene in Ford County Lawsuit that Attacks American Energy* (Feb. 4, 2025), https://www.ag.ks.gov/Home/Components/News/News/150/1292 [https://perma.cc/W44T-ZT83] ("'Left-wing environmentalist attorneys have hijacked Ford County and are using the county to push a radical, anti-oil agenda' . . . . The Attorney General is seeking to have Ford County's class allegations dismissed.").

civil penalties. *See* Doc. 86 at 116, 150-51 ¶ 271; *see also* Doc. 175 at 13-14 ("Plaintiff individuals and non-state governmental entities cannot and do not sue for civil penalties under the Kansas Restraint of Trade Act . . . ."). Kansas's arguments are unsupported as to tax issues and unsubstantiated as to civil penalties.

Finally, Kansas's concerns regarding the impact of this case on potential (but uncertain) litigation do not constitute an impaired interest. The KAG equivocates regarding the possibility of a future suit and fails to identify when a decision might be made. Kansas's argument rests wholly on conditional and nonspecific assertions that—although it is not a party and would be excluded from any proposed class—this litigation may somehow affect its ability to protect state interests should the KAG later decide to sue. Unrealized concerns that may arise in a potential but uncertain lawsuit do not constitute an impaired interest for purposes of Rule 24.[8]

Rule 24(a)(2) involves a permissive pragmatic inquiry, but its scope is not boundless. It is incumbent on Kansas to identify an interest that is impaired or to explain how this litigation may adversely affect its ability to protect that interest. The KAG's arguments are not compelling. Kansas's claimed interests are either shared with the Political Subdivisions through state statute or are unsubstantiated. In any event, all of the stated interests are dependent on uncertain future litigation. Accordingly, Kansas has not established an impaired interest necessary to intervene as a matter of right.

---

[8] Kansas claims that preclusion doctrines and stare decisis give rise to a sufficient interest justifying intervention as a matter of right. But it does not explain how res judicata or collateral estoppel would apply to any claims Kansas might bring given that it is neither a party nor a member of the proposed and uncertified class. Further, although stare decisis may sometimes be grounds for intervention, it "will not support intervention as of right in all cases." *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 296 (S.D.N.Y. 2018) (internal quotation marks deleted) (quoting *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 161 (S.D.N.Y. 2000)). Here, Kansas identifies only the possibility that a ruling here may be persuasive in some future, hypothetical lawsuit. That is insufficient to satisfy the requisite showing of impairment.

## II.    Kansas Cannot Intervene Permissively

Kansas alternatively seeks permission to intervene pursuant to Federal Rules of Civil Procedure 24(b)(1)(B) or 24(b)(2)(A). Doc. 153 at 16-17. The Court denies that request under either provision.

Rule 24(b)(1)(B) allows for intervention if the would-be intervenor can identify "a claim or defense that shares at least some aspect with a claim or defense presented in the main action."[9] *City of Herriman v. Bell*, 590 F.3d 1176, 1184 (10th Cir. 2010). Even when that hurdle has been cleared, the Court must still consider whether intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Ultimately, whether to allow intervention "is a matter entrusted to the discretion of the district court . . . . " *Statewide Masonry v. Anderson*, 511 F. App'x 801, 808 (10th Cir. 2013) (citing *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)); *see also Citizens Caring for the Future v. Haaland*, Case No. 2:23-cv-00060, 2024 U.S. Dist. LEXIS 229064, at *14 (D.N.M. Dec. 18, 2024) ("The decision to permit a party to intervene under Rule 24(b) rests within the Court's discretion."

---

[9] It is unclear whether a party seeking permissive intervention must establish Article III standing. In *San Juan County*, the Tenth Circuit held that "parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case.'" *Kane Cnty.*, 928 F.3d at 886 (quoting *San Juan Cnty. v. United States*, 420 F.3d 1197, 1206 (10th Cir. 2005), *vacated on other grounds during reh'g en banc by, San Juan Cnty.*, 503 F.3d 1163 (2007)). But the Supreme Court in *Town of Chester* later modified that rule, holding that "an intervenor as of right must 'meet the requirements of Article III if the intervenor wishes to pursue relief not requested' by an existing party." *Kane Cnty.*, 928 F.3d at 886 (quoting *Town of Chester*, 581 U.S. at 435). This explicitly clarified the Rule 24(a) requirements but did not speak precisely to what is necessary for Rule 24(b) intervention. Indeed, *Town of Chester* reads that "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint[,]" suggesting that even a party seeking to permissively intervene must establish Article III standing if they request a different form of relief. 581 U.S. at 439. Assuming Kansas must demonstrate Article III standing for purposes of permissive intervention, then for the reasons stated above, that provides an additional ground to deny Kansas's request.

(citing *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1075 (10th Cir. 2015))).

Here, Kansas does not identify any common issues overlapping with the main action, which chiefly involves Plaintiffs' allegations that Defendants conspired to restrain oil production to inflate prices. Instead, Kansas asserts that the "common question of law is [] whether the Political Subdivisions' [sic] are attempting to improperly usurp Kansas's parens patriae and statutory authority by bringing an action on behalf of all persons, States, and political subdivisions." Doc. 153 at 16 (emphasis deleted). Defendants raise several challenges to Plaintiffs' claims—including the sufficiency of the allegations, parallel conduct, plus factors, antitrust standing, and the viability of state law claims—but Kansas is not seeking to prosecute those matters, nor does it join in any defense asserted by the Defendants. It addresses a separate, novel legal question that is independent of the existing parties' claims and defenses. Rule 24(b)(1)(B)'s strictures have not been met.

Kansas's position that it is entitled to intervene pursuant to Rule 24(b)(2)(A) is similarly unpersuasive. That provision allows, inter alia, for a state government officer or agency to intervene "if a party's claim or defense" is based on a statute administered by the officer. Fed. R. Civ. P. 24(b)(2)(A). The KAG invokes this authority and asserts that he has "the exclusive authority to 'appear for the state, and prosecute and defend any and all actions and proceedings' in all federal courts." Doc. 153 at 17 (citing Kan. Stat. Ann. § 75-702(a) (2026)). Further, the KAG claims that he is vested with "sole authority to enforce antitrust and consumer protection claims on behalf of the State, its subdivisions, and its citizens." *Id.* at 17-18 (first citing 15 U.S.C. § 15c; and then citing Kan. Stat. Ann. § 50-162 (2026)). Those are not accurate characterizations of those statutes; neither law contains such restrictive antitrust language. To the contrary, the Kansas legislature has expressly provided that its political subdivisions may file damages suits for

violation of the Kansas Restraint of Trade Act. Kan. Stat. Ann. § 50-161. And Kansas is not seeking to enforce any statutory or regulatory provision. Rather, it is seeking to intervene as a defendant to dismiss claims permissible under state law. Rule 24(b)(2)(A) does not provide for intervention on that ground.

Even assuming Kansas has established the predicate requirements under Rule 24(b)(1)(B) and 24(b)(2)(A), the Court still declines its request to intervene. Kansas does not seek to litigate the substantive issues raised by any existing party; it wants to litigate a collateral matter and obtain relief incongruent with that requested by the Defendants.[10] Accordingly, Kansas's intervention in this complex multidistrict litigation would not streamline this case or advance resolution of the parties' claims and defenses. It would require this Court to address an ancillary matter regarding competing understandings of the relationship between Kansas and its political subdivisions (which appears to have been resolved by the Kansas state legislature already). That controversy would unnecessarily expand the issues, lead to additional motion practice, and "clutter the action unnecessarily" without advancing any of the issues raised by the original parties. *See Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992). Permissive intervention is therefore not proper under Rule 24(b)(3).[11]

## CONCLUSION

For the reasons stated above, Kansas has not established that it is entitled to intervene as a matter of right under Rule 24(a), and the Court declines to permit intervention under Rule 24(b).

---

[10] As explained above, the Defendants seek a final dismissal with prejudice while the KAG seeks dismissal without prejudice, the latter allowing for the possibility that the Political Subdivisions later refile their claims.

[11] To the extent Kansas believes its argument and position may be of assistance as this litigation proceeds, the Court is open to a request for leave to participate as amicus curiae.

Its motion is therefore denied. Doc. 153.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA