**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>This Document Relates to All Actions | Case No. 1:24-md-03119-MLG-LF |

**DEFENDANTS' JOINT MOTION TO CERTIFY THE COURT'S MOTION TO DISMISS ORDER FOR INTERLOCUTORY APPEAL**

Defendants[1] respectfully move this Court to certify for immediate appeal under 28 U.S.C. § 1292(b) its August 31, 2026 Order granting in part and denying in part defendants' Joint Motion to Dismiss. (ECF No. 306.) Defendants seek certification of the Court's denial of their motion to dismiss on the grounds that the political question and act of state doctrines deprive the Court of subject matter jurisdiction. Defendants' counsel conferred with plaintiffs' counsel pursuant to Local Rule 7.1(a), and plaintiffs oppose this Motion. *See* D.N.M.LR-Civ. 7.1(a). Defendants' Motion is supported by the following Memorandum of Points and Authorities.

[1] Defendants are Permian Resources Corporation; Expand Energy Corporation f/k/a Chesapeake Energy Corporation; Continental Resources, Inc.; Diamondback Energy, Inc.; EOG Resources, Inc.; Hess Corporation; Occidental Petroleum Corporation; Pioneer Natural Resources Company; Scott D. Sheffield; and John B. Hess.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Plaintiffs bring federal and state antitrust claims against defendants—U.S. shale producers and certain of their former executives—alleging a single global conspiracy to fix the price of crude oil and crude oil derivative products. (ECF No. 86, Consolidated Class Action Complaint ("Compl.") ¶ 261.) The foreign sovereign nations that make up the Organization of the Petroleum Exporting Countries ("OPEC") and OPEC+ are alleged to be defendants' "unnamed co-conspirators" in this purported conspiracy. (*Id.* ¶ 85 (emphasis added).)[2] Indeed, plaintiffs allege that OPEC first made overtures to defendants in 2017, when it "started a years-long campaign to add [defendants] to the [pre-existing] cartel." (*Id.* ¶ 110.) Plaintiffs allege meetings and communications between OPEC officials and defendants, over the course of which "OPEC and Defendants [allegedly] agreed . . . that they had a 'shared responsibility' towards the oil markets." (*Id.* ¶ 119.) Plaintiffs further allege that defendants agreed "to follow OPEC's lead on pricing" (*id.* ¶ 140) and to "coordinat[e] their output in conjunction with each other and with OPEC" (*id.* ¶ 136). The complaint itself reflects that, without OPEC's involvement, the purported conspiracy would be facially implausible. As plaintiffs concede, while OPEC "control[s] over 50% of the world's oil production," defendants allegedly account for less than 2% of that production collectively, and thus by themselves could not plausibly reduce output to raise prices in any relevant oil market without an agreement with OPEC. (ECF No. 129 at 9, 15; ECF No. 156 at 6; ECF No. 191 at 8, 19, 21.)

---

[2] Unless otherwise specified, all references to OPEC in this memorandum refer to both OPEC and OPEC+, "which consists of the OPEC countries and 10 other oil-producing nations." (*See* Compl. ¶ 85.)

Defendants bring this motion to respectfully request that the Court certify an interlocutory appeal so that defendants may seek the guidance of the Tenth Circuit on the legal significance of OPEC's alleged involvement in the purported conspiracy. Defendants moved to dismiss the complaint on several grounds, including, as relevant here, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because OPEC's alleged role in the purported conspiracy renders plaintiffs' claims nonjusticiable under the political question and act of state doctrines. (*See* ECF No. 129 at 10-18.) As defendants explained, these doctrines arise from fundamental separation of powers concerns to prevent courts from deciding questions that the Constitution commits to the political branches of government. (*See id.*) In the context of the energy sector, these concerns are particularly pressing, as judicial decisions run the risk of disrupting the stability of global oil markets, threatening national security, and undermining international cooperation efforts on issues like counterterrorism and nuclear nonproliferation. (*See id.* at 10.)

These legal issues are appropriate for immediate certification to the Tenth Circuit because they present controlling questions of law on which there is a substantial ground for difference of opinion. There is no binding Tenth Circuit authority clarifying the legal issues in question, and every other court to consider antitrust claims involving OPEC and corporate defendants has dismissed them. The Order departs from the analyses of the only two appellate courts that explained the meaning of the political question and act of state doctrines in the context of an alleged antitrust conspiracy involving both corporate defendants and OPEC. *See D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094 (9th Cir. 2024); *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th Cir. 2011). Although the Order distinguishes these cases, defendants

respectfully submit that there are substantial grounds to expect that the Tenth Circuit could reasonably reach a different result interpreting the political question and act of state doctrines in the context of the facts alleged. These questions warrant certification for interlocutory appeal under 28 U.S.C. § 1292(b).

First, whether the political question and act of state doctrines render plaintiffs' claims nonjusticiable are "controlling questions of law." Second, there is "substantial ground for difference of opinion" as to the way that these doctrines apply, when, as here, the complaint alleges an antitrust conspiracy that centers on the purported actions of foreign sovereign states. Other appellate courts considering similar cases have ruled that these doctrines require dismissal, and the Tenth Circuit has not yet addressed the meaning of the political question or act of state doctrines in analogous contexts. Third, immediate appellate review would "materially advance the ultimate termination of the litigation" because it may end the litigation in its entirety, or at least narrow the issues for discovery and trial. This factor is particularly relevant because the pending multidistrict litigation involves complex and expansive antitrust claims that would be subject to an extremely burdensome and costly discovery process.

For these and other reasons set forth below, defendants respectfully request that the Court amend the Order to certify the rulings regarding the political question and act of state doctrines for interlocutory review.

## ARGUMENT

A district court may exercise its discretion to certify an order that is otherwise not immediately appealable for interlocutory review pursuant to 28 U.S.C. § 1292(b). Certification is appropriate if an order (i) involves a "controlling question of law," for which (ii) "there is

substantial ground for difference of opinion," and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If an order that meets the criteria for certification under Section 1292(b) does not include a statement allowing for an appeal, the district court has the authority to amend that order to include such a statement. *See Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962); Fed. R. App. P. 5(a)(3).

Courts take a "flexible approach" in applying the criteria of Section 1292(b), "keeping in mind the policies behind the provision." *Resol. Tr. Corp. v. Frates*, No. 93-C-0123-E, 1994 WL 559323, at *1 (N.D. Okla. Apr. 12, 1994) (certifying interlocutory appeal of denial of motion to dismiss). As the Tenth Circuit has recognized, certifying interlocutory orders for appeal is particularly appropriate in cases "in which an interlocutory appeal might avoid protracted and expensive litigation." *Burchett v. Bardahl Oil Co.*, 470 F.2d 793, 796 (10th Cir. 1972) (holding that certification under Section 1292(b) was appropriate to consider defendants' jurisdictional arguments). Antitrust litigation often carries unusually high discovery costs. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007).

As further explained below, all three factors for certification under Section 1292(b) are satisfied here, and the Court should certify its rulings regarding the political question and act of state doctrines for Tenth Circuit review.

## I. THE COURT'S ORDER INVOLVES CONTROLLING QUESTIONS OF LAW REGARDING THE JUSTICIABILITY OF PLAINTIFFS' CLAIMS

The first statutory requirement for certification pursuant to Section 1292(b) is satisfied because the Order presents controlling questions of law—namely, whether antitrust claims based on allegations of a single conspiracy involving sovereign co-conspirators and material sovereign

conduct are nonjusticiable under the political question and/or act of state doctrines, depriving the Court of subject matter jurisdiction.

For purposes of Section 1292(b), a "question of law" refers to "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Atl. Richfield Co. v. NL Indus., Inc.*, No. 20-CV-00234-NYW-KAS, 2023 WL 5333756, at *5 (D. Colo. Aug. 18, 2023) (citations omitted). Questions of law are considered "controlling" if their "resolution is quite likely to affect the further course of the litigation, even if it is not certain to do so." *Kerr v. Hickenlooper*, No. 11-CV-01350-WJM-BNB, 2012 WL 4359076, at *2 (D. Colo. Sep. 21, 2012) (citation omitted) (certifying interlocutory appeal of political question issue). In other words, the "'controlling question of law' requirement anticipates that immediate appellate reversal . . . will result in some *immediate effect* on the course of the litigation and in some resource savings to the court or the litigants." *Grimes v. Cirrus Indus., Inc.*, No. CIV-08-1222-D, 2010 WL 2541664, at *2 (W.D. Okla. June 18, 2010). "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (citations omitted).

District courts in the Tenth Circuit regularly hold that "[q]uestions concerning . . . subject matter jurisdiction" are appropriate for interlocutory review. *See, e.g.*, *Colton v. Hilcorp Energy Dev., LP*, No. 22-CV-149-ABJ, 2023 WL 11959522, at *3 (D. Wyo. Oct. 11, 2023) (certifying interlocutory appeal on question of subject matter jurisdiction); *United States ex rel. Blyn v. Triumph Grp., Inc.*, No. 2:12-CV-922-DAK, 2016 WL 3546244, at *2 (D. Utah June 23, 2016)

(certifying interlocutory appeal of jurisdictional issue). The same conclusion is warranted here. Indeed, other district courts have certified political question and act of state issues for interlocutory appeal at the motion to dismiss phase, and appellate courts—including the Tenth Circuit—have heard those appeals. *See Kerr*, 2012 WL 4359076, at *2 (certifying interlocutory appeal of denial of motion to dismiss that raised political question argument); *Kerr v. Hickenlooper*, 744 F.3d 1156, 1173 (10th Cir. 2014) (certifying political question issue but resolving appeal based on standing); *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983) (expressly inviting motion for certification of interlocutory appeal based on act of state doctrine), *aff'd*, 767 F.2d 908 (2d Cir. 1985).[3] The Tenth Circuit has also made clear that the justiciability issue presented by "the political question doctrine" constitutes "a question of law." *See Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1030-31 (10th Cir. 2001); *cf. Liu v. Republic of China*, 892 F.2d 1419, 1424 (9th Cir. 1989) (applying *de novo* standard of review to act of state doctrine issue). These questions are also "controlling" questions of law because "if a higher court were to hold on appeal that the political question doctrine [or act of state doctrine] bars Plaintiffs' claims, . . . that would conclusively resolve the litigation in favor of

[3] *See also Cooper v. Tokyo Elec. Power Co.*, 166 F. Supp. 3d 1103, 1141-42 (S.D. Cal. 2015) (certifying political question issue for interlocutory appeal in order denying motion to dismiss), *aff'd,* 860 F.3d 1193 (9th Cir. 2017); *Mottola v. Nixon*, 464 F.2d 178, 179 (9th Cir. 1972) (considering interlocutory appeal of denial of motion to dismiss that argued "the action present[ed] a non-justiciable political question"); *Smith v. Reagan*, 663 F. Supp. 692, 696 (E.D.N.C. 1987) (certifying interlocutory appeal of political question issue raised in motion to dismiss), *rev'd*, 844 F.2d 195, 198 (4th Cir. 1988) (finding complaint presented a nonjusticiable political question); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 530 n.1 (5th Cir. 1992) (explaining that the district court certified act of state question for interlocutory appeal, and the Fifth Circuit accepted this question, but resolving the appeal on other grounds); *Williams v. Curtiss-Wright Corp.*, 694 F.2d 300, 301 (3d Cir. 1982) (deciding interlocutory appeal of act of state question certified by district court under Section 1292(b)).

Defendant[s]." *See Kerr*, 2012 WL 4359076, at *2.

Thus, the Order's rulings on the political question and act of state doctrines satisfy the first statutory requirement for certification.

## II. <u>THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION</u>

Certification of these questions for interlocutory review is also appropriate because there is "substantial ground for difference of opinion" as to whether the political question and/or act of state doctrines deprive the Court of subject matter jurisdiction in this case. *See* 28 U.S.C. § 1292(b). Substantial ground for difference of opinion exists when "[t]here is no clear, controlling authority in this Circuit addressing" the issue, especially when appellate courts in other circuits have "reached precisely the opposite conclusion." *See Boellstorff v. State Farm Mut. Auto. Ins. Co*., No. 05 CV 02192 MSK CBS, 2007 WL 552247, at *3 (D. Colo. Feb. 20, 2007), *aff'd*, 540 F.3d 1223 (10th Cir. 2008). This requirement is met as long as "there is room for reasonable debate," even if the Court "[does] not adopt the argument urged by the Defendant and adopted by [other courts]." *Id.*; *see also Guesby v. Kennedy*, 580 F. Supp. 1280, 1286 (D. Kan. 1984) (inviting parties to file motion to certify under Section 1292(b) because the court's opinion was "in conflict with the conclusion reached by the only two courts to previously address the question" even though the court was "not persuaded by these authorities to the contrary").

Moreover, "'[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case.'" *Kerr*, 2012 WL 4359076, at *3 (quoting 16 Charles Alan Wright et al., Fed. Prac. & Proc. § 3930 (2d ed. 2012)). Where, as here, "'proceedings that threaten to endure for

several years depend on an initial question of jurisdiction, . . . a relatively low threshold of doubt'" is appropriate. *Id.*; *see also Atl. City Elec. Co. v. Gen. Elec. Co.*, 207 F. Supp. 613, 620 (S.D.N.Y. 1962) (holding that "a narrow approach is not justified" to this statutory requirement in the context of a threshold question that could "affect[] the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort" that complex antitrust cases might require), *aff'd*, 312 F.2d 236 (2d Cir. 1962).

Here, there is substantial ground for difference of opinion regarding the Order's analyses of the political question and act of state doctrines because the Tenth Circuit has no clear, controlling authority on these points of law, and the Ninth Circuit and the Fifth Circuit reached opposite conclusions on these issues. In *D'Augusta*, the Ninth Circuit affirmed dismissal under the political question and act of state doctrines of a complaint alleging that "various oil producers" engaged in "an antitrust conspiracy to limit oil production" involving OPEC. *See D'Augusta*, 117 F.4th at 1098; *see also D'Augusta v. Am. Petroleum Inst.*, No. 2:22-cv-01979-JWS, 2023 WL 137474, at *3 (N.D. Cal. Jan. 9, 2023). Likewise, in *Spectrum Stores*, the Fifth Circuit affirmed dismissal of an antitrust complaint alleging that more than a dozen oil production companies conspired with OPEC member nations to fix the price of crude oil because ruling on the lawfulness of the corporations' alleged coordination with OPEC nations "would reflect a value judgment on [the foreign nations'] decisions and actions—a diplomatic determination textually committed to the political branches." *Spectrum Stores*, 632 F.3d at 951; *see also D'Augusta*, 117 F.4th at 1103 (explaining that *Spectrum Stores* applied the political question doctrine "to reject more generalized allegations of collusion between American oil companies and OPEC"). Neither plaintiffs nor the Order identify binding Tenth Circuit or

Supreme Court authority that has approached these doctrines differently than the Ninth and Fifth Circuits. (*See* ECF No. 156 at 4-20; Order at 9-15.) Although the Court was not persuaded by these authorities, they are nonetheless sufficient to provide grounds for "reasonable debate" for purposes of Section 1292(b). *Boellstorff*, 2007 WL 552247, at *3.

As demonstrated below, there are ample bases in the Order's analyses of the political question doctrine, the act of state doctrine, and the application of these doctrines to plaintiffs' allegations to support interlocutory appeal, especially given the "relatively low threshold of doubt" applicable to controlling jurisdictional questions in complex cases. *See Kerr*, 2012 WL 4359076, at *3.

***Political Question Doctrine.*** The Order analyzes the six factors the Supreme Court identified in *Baker v. Carr*, 369 U.S. 186 (1962), in a manner that is materially different from the approach taken by the Fifth Circuit and the Ninth Circuit—or at least in a manner different enough to prompt reasonable debate. (*See* Order at 13-14.) With respect to the first *Baker* factor, "a textually demonstrable constitutional commitment of the issue to a coordinate political department," *Baker*, 369 U.S. at 217, the Order holds that this factor weighs against defendants because the "executive branch's authority over foreign affairs" is "merely . . . a general principle" (Order at 13 (citation omitted)). This conclusion contrasts with the analysis of the Fifth Circuit, which held that "the foreign policy issues at stake in this case are textually committed to the political branches," *Spectrum Stores*, 632 F.3d at 952, and the Ninth Circuit, which held that "the conduct of foreign relations is committed by the Constitution to the political departments of the Federal Government," *D'Augusta*, 117 F.4th at 1102 (quoting *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 983 (9th Cir. 2007)).

The Order similarly departs from the Fifth Circuit's and Ninth Circuit's analyses of the second *Baker* factor, which asks whether there is "a lack of judicially discoverable and manageable standards for resolving [the question.]" *Baker*, 369 U.S. at 217. The Order holds that the "nation's antitrust laws provide workable standards to resolve" the "core question" of whether defendants entered an unlawful conspiracy, notwithstanding the alleged role of OPEC in that purported conspiracy. (Order at 14 (emphasis added).) In contrast, the Fifth Circuit held that this same factor weighed against judicial resolution of antitrust claims alleging that corporate defendants conspired with OPEC because "the Sherman and Clayton Acts are decidedly inadequate to provide judicially manageable standards for resolving such momentous foreign policy questions." *Spectrum Stores*, 632 F.3d at 952-53 (emphasis added). And the Ninth Circuit similarly held that "our antitrust laws are poorly suited for [the] task" of "decoupl[ing] our country's oil markets from the decisions of foreign nations." *D'Augusta*, 117 F.4th at 1102 (emphasis added).

With respect to the four remaining *Baker* factors, the Order also diverges from the Fifth Circuit's analysis.[4] The Order concludes that each of these factors weighs against applying the political question doctrine to plaintiffs' claims by relying on plaintiffs' assertions that they are bringing only "domestic antitrust claims against domestic defendants" and declining to consider the foreign policy implications of those claims. (*See* Order at 14.) The Fifth Circuit reached the opposite conclusion—ruling that each of the remaining *Baker* factors "weigh[ed] against an

[4] The Ninth Circuit did not reach the remaining *Baker* factors in *D'Augusta* because it found "the first two factors alone" sufficient to deprive the court of jurisdiction. *See D'Augusta*, 117 F.4th at 1101 n.2.

adjudication of this case on the merits" based on "[d]eeply rooted constitutional separation-of-powers principles." *Spectrum Stores*, 632 F.3d at 953-54 (citation omitted). In other words, the Fifth Circuit determined that allegations of a conspiracy involving both corporate defendants and OPEC would require a court to make rulings that would have implications for Executive Branch policies that should not be made by the judicial branch. The Order reached the opposite conclusion on the basis of plaintiffs' erroneous submission that the Court could avoid such rulings by focusing solely on the domestic participants in the alleged conspiracy while disregarding the unnamed co-conspirator members of OPEC (even though no exclusively domestic conspiracy is alleged).

These differences in resolving the political question doctrine issues demonstrate "substantial grounds for difference of opinion." Appellate review is thus warranted to determine the proper application of the political question doctrine.

***Act of State Doctrine.*** The Order's analysis of the act of state doctrine also diverges from both the Ninth Circuit and the Fifth Circuit. The Order holds that the act of state doctrine does not apply because "[the] Court is not being asked to give its imprimatur to any foreign government's conduct or otherwise invalidate such actions." (Order at 15.) But this ruling reflects a far narrower view of the act of state doctrine than the Ninth Circuit's in *D'Augusta*, which held that the doctrine applies to an alleged antitrust conspiracy if "[foreign] countries were indispensable co-conspirators in the scheme to reduce oil production." *D'Augusta*, 117 F.4th at 1103; *cf.* Compl. ¶ 85 (alleging that "the members of OPEC and OPEC+" are "co-conspirators" in the purported conspiracy). Under the broader view advanced by the Ninth Circuit, "how sovereign nations . . . manage their own petroleum resources" reflects the foreign policy

decisions of those nations, including when they "allegedly demanded [ U.S. producers'] cooperation." *D'Augusta*, 117 F.4th at 1103. Accordingly, antitrust claims based on U.S. producers' alleged responses to demands from OPEC are "covered by the act of state doctrine because they seek to litigate the petroleum policy of foreign nations." *Id*. The Fifth Circuit also declined to adopt the type of narrow view of the act of state doctrine applied in the Order, holding that adjudicating a conspiracy claim involving OPEC member states "would necessarily call into question the acts of foreign governments with respect to exploitation of their natural resources." *Spectrum Stores*, 632 F.3d at 954. These differences confirm that the required substantial grounds for difference of opinion exist here regarding the application of the act of state doctrine, which provides a separate basis for interlocutory review.

***Application of These Doctrines to the Complaint.*** The Order determines that the *D'Augusta* and *Spectrum Stores* decisions are distinguishable from the conspiracy alleged in the complaint here, such that those cases are not "controlling or persuasive" authority. (*See* Order at 12.) But there is reasonable doubt surrounding whether this decision was correct. The Order distinguishes the Ninth Circuit and Fifth Circuit decisions by relying on plaintiffs' mischaracterization of the conspiracy alleged in their complaint. In opposing defendants' motion to dismiss, plaintiffs framed their claim as "a domestic conspiracy to restrain U.S. shale oil production." (ECF No. 156 at 1; *see also id.* at 5-6.) The Order adopts this mischaracterization. (*See* Order at 10 (describing the "central theory" as "a domestic cartel to constrain production to fix prices in the United States").)

But these characterizations of the complaint's allegations are inaccurate: here, just like in *D'Augusta* and *Spectrum Stores*, the complaint alleges a single conspiracy between corporate

defendants and the members of OPEC. In particular, the complaint alleges that "the members of OPEC and OPEC+ (which consists of the OPEC countries and 10 other oil-producing nations[])" are "unnamed co-conspirators" (Compl. ¶ 85 (emphasis added)) that engaged in a "years-long campaign to add [defendants] to the cartel" (*id.* ¶ 110). That campaign allegedly culminated when "defendants actualize[d] their agreement with OPEC" by "coordinating their output in conjunction with each other and with OPEC." (*Id.* at 45 (Heading E); ¶ 136.) Indeed, the complaint's factual allegations begin with OPEC's structure and role in global oil production. (*Id.* ¶¶ 93-96.) In total, the complaint includes over 330 total allegations regarding OPEC and its participation in a purported single conspiracy with the corporate defendants. The Court initially read the complaint the same way, explaining at oral argument that "a fair reading of [plaintiffs'] complaint is that [they] are alleging a conspiracy between the defendants here and OPEC." (Menitove Decl. Ex. A, May 20, 2025 Hr'g Tr. at 46:13-15.)

In *D'Augusta*, the district court and Ninth Circuit faced an analogous situation. The plaintiffs there also claimed they alleged a purely domestic conspiracy among American corporations. But plaintiffs' argument did not salvage their claims because the complaint itself alleged a conspiracy between corporate defendants and the members of OPEC. *See D'Augusta*, 117 F.4th at 1103-05. As the *D'Augusta* district court explained, "Plaintiffs argue that they have alleged an independent and completely domestic conspiracy," but "the actual allegations in the complaint confirm a purported global, not just private or domestic agreement." *D'Augusta*, 2023 WL 137474, at *4.

In other words, far from being "materially different" (Order at 12), plaintiffs' arguments here mirror the arguments that were squarely rejected in *D'Augusta*: an attempt to end-run the

political question and act of state doctrines by declining to name as defendants the foreign sovereign alleged co-conspirators even though they are central to the claims. In fact, plaintiffs here heavily relied on OPEC-related allegations in their briefing to argue that their conspiracy claim is plausible. (*See* ECF No. 156 at 24-29.) For example, plaintiffs argued that the conspiracy is plausible because they allege "a half-dozen specific meetings where Defendants exchanged forward-looking production information" (*id.* at 25), but 23 of the 24 paragraphs of the complaint's allegations regarding those purported meetings allege communications with OPEC members (*see* Compl. ¶¶ 112-35).[5] Plaintiffs also relied on allegations of purported "interfirm communications" uncovered by the FTC (*see* ECF No. 156 at 25-26 (citing Compl. ¶¶ 177-79, 185, 187)), but the complaint's underlying allegations are actually that the individual defendants had "close communications with high-ranking OPEC officials" (*id.* ¶ 179) and "a lengthy history of communications and meetings [with] OPEC Secretary General Barkindo" (*id.* ¶ 187). Similarly, plaintiffs' argument regarding "additional motive to collude" because of "common ownership" is supported with reference to allegations involving OPEC's conduct. (*Compare* ECF No. 156 at 28-29 (relying on paragraphs 197-203 of the complaint), *with* Compl. ¶ 199 ("OPEC's direct communications with these shareholders supplemented OPEC's direct communications with the Defendants . . . .").)

Thus, the complaint here alleges an overarching conspiracy involving corporate defendants and members of OPEC, just like the complaints in *D'Augusta* and *Spectrum Stores*. And the very plausibility of the complaint's conspiracy claim hinges on OPEC's participation

[5] Notably, the only allegation in this portion of the complaint that does not directly involve OPEC also does not involve defendants. (*See* Compl. ¶ 117 (alleging meeting between "twelve major shareholders . . . in the 20 largest U.S. shale oil companies").)

because defendants' collective global share of crude oil production is less than 2%. (*See* ECF No. 129 at 9, 15.) Plaintiffs did not disclaim this allegation or explain how a supply reduction conspiracy involving only the incremental production decisions of companies controlling less than 2% of overall production could be plausible. (*See* ECF No. 156 at 30.) Nor could they, because the complaint is replete with allegations regarding defendants' roles in "the global oil market" as opposed to a domestic one, which further belies plaintiffs' characterization of their complaint as articulating a purely domestic conspiracy. (Compl. ¶ 8 (emphasis added); *see also, e.g.*, *id.* ¶¶ 15 (alleging the conspiracy affects "U.S. (and global) crude oil prices"), 97 ("Fracking changed the global oil market."), 127 (alleging communications between a defendant and OPEC about "global oil prices"), 131 (alleging that OPEC's Secretary General Barkindo stated "[it] is a global industry"), 139 (alleging that "Defendants and OPEC signaled to each other their willingness to end their price war and market share competition" with respect to "global crude oil prices"), 172 (alleging OPEC statements about "OPECs and Defendants' 'shared responsibility' for global oil markets"), 225 (alleging that "U.S. shale oil has affected oil prices by increasing global crude oil supply" and impacting "the global price of oil"), 226 (alleging defendants are "swing producers for the global market"), 227 (alleging defendants have the "ability to influence global crude oil prices").) Notwithstanding plaintiffs' heavy reliance on allegations related to OPEC and the global oil market, the Order accepts plaintiffs' mischaracterization of these allegations as supporting a wholly "domestic" conspiracy. (*See* Order at 21-24.)

In short, there is reasonable doubt, and grounds for reasonable debate, about whether the Order erred in distinguishing the alleged conspiracy with OPEC in this case from the allegations

that the Fifth and Ninth Circuits held required dismissal under the political question and act of state doctrines. All of these cases have involved alleged global conspiracies between corporate defendants and the members of OPEC, which is not surprising because a conspiracy among only domestic defendants would be implausible in light of their tiny share of the global market for crude oil.

## III. CERTIFYING THE COURT'S ORDER MAY MATERIALLY ADVANCE THE LITIGATION'S ULTIMATE TERMINATION

Finally, an immediate appeal of the Order's rulings regarding the political question and act of state doctrines satisfies the final statutory factor because it "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If an appellate reversal would completely terminate a lawsuit, "[n]o more is required to satisfy this element of section 1292(b)." *Hart v. Boeing Co.*, No. 09 CV-01066-REB-MEH, 2010 WL 2635449, at *2 (D. Colo. June 28, 2010). As other in-circuit courts certifying interlocutory appeals on political question issues have recognized, "if a higher court were to hold on appeal that the political question doctrine bars Plaintiffs' claims, . . . that decision would materially advance the ultimate termination of the litigation in favor of Defendant." *Kerr*, 2012 WL 4359076, at *3 (granting motion to certify interlocutory appeal of order denying motion to dismiss based on political question doctrine). "An immediate appeal is especially proper" when parties seek an interlocutory appeal of jurisdictional issues because such an appeal "would best serve considerations of judicial economy and fairness to the litigants." *United States ex rel. Blyn*, 2016 WL 3546244, at *2 (citation omitted).

Here, if the Tenth Circuit reverses the Order on the political question and/or act of state doctrines, it would almost certainly result in the dismissal of all of plaintiffs' claims, just as in

*D'Augusta* and *Spectrum Stores*. If such a reversal occurs, the Court and the parties would be saved the time and expense of burdensome and lengthy litigation—including extensive discovery—that is otherwise likely to persist for years, a consideration that weighs especially heavily in antitrust litigation and multidistrict litigation. *See, e.g.*, *Twombly*, 550 U.S. at 559 (explaining importance of weeding out non-viable Sherman Act § 1 claims "to avoid the potentially enormous expense of discovery"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190, 1244 (E.D. Pa. 1980) (holding that "the certification procedure of 28 U.S.C. § 1292(b) was intended specifically to expedite the disposition of 'big' cases like [an antitrust] M.D.L."); *In re Indep. Serv. Orgs. Antitrust Litig.*, No. Civ. A. MDL-1021, 1997 WL 450028, at *4 (D. Kan. July 17, 1997) (holding that certification of interlocutory appeal in multidistrict litigation is "consistent with one of the primary purposes of section 1292(b), *i.e.*, to avoid the burdens on the parties and the court of unnecessary or repeated protracted proceedings"). Put simply, "to require the parties to go through a trial before a court lacking jurisdiction would be both expensive and senseless." *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 115 (5th Cir. 1963). Indeed, the Tenth Circuit has specifically recognized that certifying interlocutory orders for appeal is particularly appropriate in cases "in which an interlocutory appeal might avoid protracted and expensive litigation." *Burchett*, 470 F.2d at 796.

Moreover, even a Tenth Circuit order that does not mandate complete dismissal is nonetheless likely to materially advance the litigation's ultimate termination by clarifying the scope of plaintiffs' claims and discovery moving forward. The third requirement of Section 1292(b) is also met when, after appellate review, "the litigation could be narrowed to proceed." *Colton v. Hilcorp Energy Dev., LP*, 2023 WL 11959522, at *4; *see also Nat'l Credit*

*Union Admin. Bd. v. RBS Sec., Inc.*, No. 11-2340-RDR, 2012 WL 4210500, at *4 (D. Kan. Sep. 19, 2012) (holding that interlocutory appeal was warranted because appellate review "might significantly narrow the scope of discovery and the proof that the parties would present at trial"). Here, appellate review may result in guidance about the scope of any surviving antitrust claims—guidance that could substantially narrow discovery by, for example, clarifying whether plaintiffs can pursue claims or rely on evidence regarding OPEC or defendants' interactions with OPEC members. Based on plaintiffs' discovery requests propounded thus far, they intend to conduct extensive discovery into the communications and activities of OPEC. So far, plaintiffs have requested "all Documents and Communications" related to:

- "OPEC, including, but not limited to, the impact or effect of policies considered or implemented by OPEC on the Supply and Price of oil, Crude Oil Derivative Products, or Oil Commodities Contracts in the U.S. or globally" (Menitove Decl. Ex. B, Request for Production ("RFP") No. 7);
- "any Meetings, including calls, videoconferences, in-person meetings or get-togethers of any sort, or conferences, where You or any Defendant(s) attended and/or OPEC also attended" (*id.*, RFP No. 8);
- "any agreement, or potential agreement, between or among . . . any U.S. Shale Producer and OPEC concerning Shale Production, oil Prices, export strategies, joint production agreements, operational plans, market share, capital expenditures, and Inventory or Supply management strategies" (*id.*, RFP No. 11); and
- "OPEC's role in the U.S. or global oil industry, including as to setting, stabilizing, increasing, or decreasing production volumes and/or oil Prices" (*id.*, RFP No. 19).

A final determination of the distinction between nonjusticiable OPEC-related conduct and any legally viable and purely domestic conspiracy claim (if one were found by the Tenth Circuit to have been plausibly alleged) would serve judicial efficiency if it were made before lengthy discovery, expert reports, class certification, summary judgment, and any trial of this litigation.

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that this Court certify its August 31, 2026 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: October 13, 2026

Respectfully submitted,

*/s/ Boris Bershteyn*
Boris Bershteyn
Karen M. Lent
Michael H. Menitove
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000
boris.bershteyn@skadden.com
karen.lent@skadden.com
michael.menitove@skadden.com

Samuel G. Liversidge
Jay P. Srinivasan
S. Christopher Whittaker
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
sliversidge@gibsondunn.com
jsrinivasan@gibsondunn.com
cwhittaker@gibsondunn.com

Eric R. Burris
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
201 Third Street NW, Suite 1800
Albuquerque, NM 87102-4386
Telephone: (505) 244-0770
eburris@bhfs.com

*Attorneys for Defendant*
*Pioneer Natural Resources Company*

By: */s/ John M. Taladay*
John M. Taladay
Christopher Wilson
Kelsey Paine
Fran Jennings
BAKER BOTTS L.L.P.

700 K Street NW
Washington, D.C. 20001-5692
Tel: (202) 639-7909
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
kelsey.paine@bakerbotts.com
fran.jennings@bakerbotts.com

Megan Tankel
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-5999
Tel: (212) 408-2500
megan.tankel@bakerbotts.com

Benjamin F. Feuchter
Thomas C. Bird
JENNINGS HAUG KELEHER MCLEOD
201 Third Street NW, Suite 1200
Albuquerque, NM 87102
Tel: (505) 346-4646
bf@jhkmlaw.com
tcb@jhkmlaw.com

*Attorneys for Defendant*
*EOG Resources, Inc.*

By: _/s/ Jeffrey L. Kessler_
Jeffrey L. Kessler
Jeffrey J. Amato
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Jeffrey.Kessler@winstontaylor.com
Jeffrey.Amato@winstontaylor.com

Thomas B. Walsh, IV
WINSTON TAYLOR LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel: (212) 294-6700
Tom.Walsh@winstontaylor.com

Benjamin Allison
Laura Creech
BARDACKE ALLISON MILLER LLP
141 E. Palace Avenue
Santa Fe, NM 87501
Tel: (505) 995-8000
ben@bardackeallison.com
laura@bardackeallison.com

*Attorneys for Defendant*
*Diamondback Energy, Inc.*

By: */s/ Marguerite M. Sullivan*
Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Marguerite.Sullivan@lw.com

Lawrence E. Buterman
Robert (Bobby) Vance
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Lawrence.Buterman@lw.com
Bobby.Vance@lw.com

*Attorneys for Defendant*
*Expand Energy Corporation*
*(F/K/A Chesapeake Energy Corporation)*

By: */s/ Kevin S. Schwartz*
Kevin S. Schwartz
David A. Papirnik
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Tel: (212) 403-1062
kschwartz@wlrk.com
dapapirnik@wlrk.com

*Attorneys for Defendants*
*Hess Corporation and John Hess*

By: */s/ Jeffrey J. Zeiger*
Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: 312-862-3237
jzeiger@kirkland.com

Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: 212-446-5967
devora.allon@kirkland.com

Earl E. DeBrine, Jr.
MODRALL SPERLING
500 4th St. NW, Suite 1000
Albuquerque, NM 87102
Tel: (505) 848-1800
earl.debrine@modrall.com

*Attorneys for Defendant*
*Occidental Petroleum Corporation*

By: */s/ Thomas Mueller*
Thomas Mueller
Susan Musser
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington DC 20037
202-663-6766
thomas.mueller@wilmerhale.com
susan.musser@wilmerhale.com

Nana Wilberforce
WILMER CUTLER PICKERING
HALE AND DORR LLP

350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
213-443-5376
nana.wilberforce@wilmerhale.com

Michael Burrage
WHITTEN BURRAGE
512 North Broadway Avenue, Ste 300
Oklahoma City, OK 73102
Tel: (888) 783-0351
mburrage@whittenburragelaw.com

H. Brook Laskey
Mary E. Jones
MCCOY LEAVITT LASKEY LLC
317 Commercial St. NE, Suite 200
Albuquerque, NM 87102
Telephone: (505) 246-0455
blaskey@MLLlaw.com
Mjones@mlllaw.Com

*Attorneys for Defendant*
*Continental Resources, Inc.*

By: */s/ Michael W. Scarborough*
Michael W. Scarborough
Dylan I. Ballard
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Tel: (415) 979–6900
mscarborough@velaw.com
dballard@velaw.com

Craig P. Seebald
Stephen M. Medlock
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037
Tel: (202) 639-6500
cseebald@velaw.com
smedlock@velaw.com

*Attorneys for Defendant*
*Permian Resources Corporation*

By: */s/ David I. Gelfand*
David I. Gelfand
Jeremy J. Calsyn
Joseph M. Kay
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
2112 Pennsylvania Avenue NW
Ste 1000
Washington, DC 20037
Tel: (202) 974-1690
dgelfand@cgsh.com
jcalsyn@cgsh.com
jkay@cgsh.com

Kurt A. Sommer
SOMMER, UDALL, SUTIN,
HARDWICK & HYATT, PA
PO Box 1984
Santa Fe, NM 87504
Tel: (505) 982-4676
kas@sommerudall.com

*Attorneys for Defendant*
*Scott D. Sheffield*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 13, 2026, true and correct copies of Defendants' Joint Motion to Certify the Court's Motion to Dismiss Order for Interlocutory Appeal were filed electronically pursuant to CM/ECF procedure for the District of New Mexico, which caused the parties to be served via electronic means.

Dated: October 13, 2026

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By *_/s/ Boris Bershteyn_*

Boris Bershteyn
Karen M. Lent
Michael H. Menitove
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000
boris.bershteyn@skadden.com
karen.lent@skadden.com
michael.menitove@skadden.com

Samuel G. Liversidge
Jay P. Srinivasan
S. Christopher Whittaker
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
sliversidge@gibsondunn.com
jsrinivasan@gibsondunn.com
cwhittaker@gibsondunn.com

Eric R. Burris
BROWNSTEIN HYATT FARBER SCHRECK, LLP

201 Third Street NW, Suite 1800
Albuquerque, NM 87102-4386
Telephone: (505) 244-0770
eburris@bhfs.com

*Attorneys for Defendant*
*Pioneer Natural Resources Company*